**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>JOERNS WOUNDCO HOLDINGS, INC.,<br>*et al.,*<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11401 (JTD)<br><br>Jointly Administered<br><br>**Re: Docket Nos. 18, 20, 92, 118, 141, 143, 145, 146, 147, 148** |

**FINDINGS OF FACT, CONCLUSIONS
OF LAW, AND ORDER (I) APPROVING THE
DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT TO
SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE,
(B) SOLICITATION AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS,
AND (II) CONFIRMING THE JOINT PREPACKAGED CHAPTER 11 PLAN OF
JOERNS WOUNDCO HOLDINGS, INC. AND ITS AFFILIATED DEBTORS**

Joerns WoundCo Holdings, Inc. and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), having proposed and filed (A) the *Joint Prepackaged Chapter 11 Plan of Joerns WoundCo Holdings, Inc. and its Affiliated Debtors,* dated June 21, 2019 and filed with the United States Bankruptcy Court for the District of Delaware (the "**Court**") on June 25, 2019 [D.I. 20] (the "**Initial Plan**"); (B) the *Amended Joint Prepackaged Chapter 11 Plan of Joerns WoundCo Holdings, Inc. and its Affiliated Debtors,* dated July 22, 2019 and filed contemporaneously herewith [D.I. 141] (the "**Amended Plan**" and as supplemented by the Plan Supplement (defined below), and as amended in accordance with the terms thereof and this Confirmation Order, the "**Plan**"), annexed hereto as

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Joerns WoundCo Holdings, Inc. (3555); Dynamic Medical Systems, LLC (6816); Global Medical, LLC (0696); Joerns LLC (3625); Joerns Healthcare, LLC (1510); Joerns Healthcare Mexico Holdings I LLC (2869); Joerns Healthcare Mexico Holdings II LLC (2942); Joerns Healthcare Parent LLC (2727); Joerns Services LLC (3441); RecoverCare, LLC (1634); RCJH Cambridge Technologies, LLC (5541); RCJH Merger Sub I, LLC (3709); and Scott Technology, LLC (8047). The address of the Debtors' corporate headquarters is 2430 Whitehall Park Drive, Suite 100, Charlotte, NC 28273.

**Exhibit A**, and that certain supplement to the Plan, dated and filed with the Court on July 8, 2019 [D.I. 92] (the "**Initial Plan Supplement**") and as amended by the certain supplement to the Plan filed contemporaneously herewith [D.I. 143, 144] (the "**Amended Plan Supplement**" and together with the Initial Plan Supplement and any further amendments or supplements to the documents contained therein, the "**Plan Supplement**"); and (C) (i) the *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Joerns WoundCo Holdings, Inc. and its Affiliated Debtors,* dated as of June 21, 2019 and filed with the Court on June 25, 2019 [D.I. 18] (the "**Disclosure Statement**"), and (ii) appropriate ballots for voting on the Plan (the "**Ballots**"), in the forms attached as Exhibits "6" and "7" to the *Affidavit of Service of Solicitation Materials,* sworn to by Jane Sullivan of Epiq Corporate Restructuring, LLC ("**Epiq**" or "**Noticing Agent**"), the Debtors' claims and noticing agent and proposed restructuring advisor and filed with the Court on July 10, 2019 [D.I. 97] (the "**Solicitation Affidavit**"), having been duly transmitted to holders of Claims[2] in compliance with the procedures (the "**Solicitation Procedures**") set forth in the *Motion of Debtors for Entry of an Order (I) Scheduling, and Shortening Notice of, a Combined Hearing on (A) Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan, (II) Approving Form and Manner of Notice of (A) Combined Hearing and (B) Commencement of Chapter 11 Cases, (III) Establishing Procedures for Objecting to (A) Disclosure Statement or (B) Prepackaged Plan, (IV) Approving Prepetition Solicitation Procedures, (V) Conditionally Directing the United States Trustee Not to Convene a Section 341 Meeting of Creditors, (VI) Conditionally Extending Deadline to File Schedules and Statements, and (VII) Granting Related Relief* filed with the Court on June 25, 2019 [D.I. 17] (the "**Scheduling Motion**"); and the Court having entered the *Order (I) Scheduling, and Shortening Notice of, a Combined Hearing on (A)*

---

[2]   Capitalized terms used, but not otherwise defined, herein shall have the same meanings ascribed to them in the Plan.

*Adequacy of Disclosure Statement and (B) Confirmation of Prepackaged Plan, (II) Approving Form and Manner of Notice of (A) Combined Hearing and (B) Commencement of Chapter 11 Cases, (III) Establishing Procedures for Objecting to (A) Disclosure Statement or (B) Prepackaged Plan, (IV) Approving Prepetition Solicitation Procedures, (V) Conditionally Directing the United States Trustee Not to Convene a Section 341 Meeting of Creditors, (VI) Conditionally Extending Deadline to File Schedules and Statements, and (VII) Granting Related Relief* [D.I. 66] (the "**Scheduling Order**"), which, among other things, scheduled the combined hearing to approve the Disclosure Statement and consider confirmation of the Plan for July 25, 2019 (the "**Combined Hearing**"); and due notice of the Combined Hearing and commencement of the Chapter 11 Cases in the form attached as Exhibit B to the Scheduling Motion (the "**Combined Notice**") having been given to holders of Claims against and Interests in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), the Scheduling Order, and the Solicitation Procedures, as established by the affidavits of service, mailing, and publication filed with the Court, including the *Affidavit of Service of Wing Chan* [D.I. 89] (the "**Notice of Commencement Affidavit**") and *Verification of Publication* [D.I. 98] (the "**Publication Affidavit**"); and due notice of the Plan Supplement having been given to holders of Claims in the Debtors and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures, as established by the *Affidavit of Service of Forrest Kuffer* regarding the *Notice of Filing Plan Supplement in Connection with Joint Prepackaged Chapter 11 Plan of Reorganization of Joerns WoundCo Holdings, Inc. and its Affiliated Debtors* [D.I. 102], and such filings and notice thereof being sufficient under the circumstances and no

3

further notice being required; and based upon and after full consideration of the entire record of the Combined Hearing, including (I) the Disclosure Statement, (II) the Plan (including the Plan Supplement), (III) the Solicitation Affidavit, (IV) the *Declaration of John Regan in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 23] (the "**First Day Declaration**"), (V) the *Declaration of John Regan in Support of Debtors' Request for (I) Approval of Debtors' Disclosure Statement, (II) Final Approval of Solicitation Procedures, and (III) Confirmation of Joint Prepackaged Chapter 11 Plan of Joerns WoundCo Holdings, Inc. and its Affiliated Debtors* filed contemporaneously herewith (the "**Regan Declaration**"), (VI) the *Declaration of Barak Klein in Support of Debtors' Request for (I) Approval of Debtors' Disclosure Statement, (II) Final Approval of Solicitation Procedures, and (III) Confirmation of Joint Prepackaged Chapter 11 Plan of Joerns WoundCo Holdings, Inc. and its Affiliated Debtors* filed contemporaneously herewith (the "**Klein Declaration**"), (VII) the *Declaration of Erik Graber in Support of Debtors' Request for (A) Approval of Debtors' Disclosure Statement, (B) Final Approval of Solicitation Procedures, and (C) Confirmation of Joint Prepackaged Chapter 11 Plan of Joerns WoundCo Holdings, Inc. and its Affiliated Debtors* filed contemporaneously herewith (the "**Graber Declaration**"), and (VIII) the *Declaration of Jane Sullivan of Epiq Corporate Restructuring, LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Joint Prepackaged Chapter 11 Plan of Joerns WoundCo Holdings, Inc. and its Affiliated Debtors,* filed with the Court on July 18, 2019 [D.I. 118] (the "**Tabulation Declaration**"); and objections to the approval of the Disclosure Statement or confirmation of the Plan all being withdrawn, resolved, or overruled by the Court; and the Court being familiar with the Disclosure Statement and the Plan and other relevant factors affecting the Chapter 11 Cases (as defined below); and the Court being familiar with, and having taken judicial notice of, the entire record of the Chapter 11 Cases; and upon the arguments of

counsel and the evidence proffered and adduced at the Combined Hearing; and the Court having found and determined that the Disclosure Statement and Solicitation Procedures should be approved and the Plan should be confirmed as reflected by the Court's rulings made herein and at the Combined Hearing; and after due deliberation and sufficient cause appearing therefor; the Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.  <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Combined Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.  <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and this court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code, and, pursuant to Local Bankruptcy Rule 9013-1(f), the Debtors consent to the entry of a final order by the Court in accordance with the terms set forth herein to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

C.      Chapter 11 Petitions.  On June 24, 2019 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code.  Further, in accordance with an order of this Court, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).  *See* Docket No. 53.

D.      Judicial Notice.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

E.      Burden of Proof.  Each of the Debtors has met the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

F.      Adequacy of Disclosure Statement.  The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, as amended (the "**Securities Act**"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions set forth therein, and (c) is approved in all respects.

G.      Voting.  As evidenced by the Tabulation Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent

with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable non-bankruptcy law.

H.    Solicitation. Prior to the Petition Date, the Plan, the Disclosure Statement, and the Ballots, and, subsequent to the Petition Date, the Combined Notice, were transmitted and served in compliance with the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Local Bankruptcy Rules, and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Claims in Class 3 (First Lien Claims) and Class 4 (Second Lien Claims)—the Classes of Claims entitled under the Plan to vote to accept or reject the Plan (the "**Voting Classes**"). The continued postpetition solicitation of the Voting Classes was proper and in compliance with section 1125 of the Bankruptcy Code. The period during which the Debtors solicited acceptances to the Plan was a reasonable period of time for the Voting Classes to make an informed decision to accept or reject the Plan. The Debtors were not required to solicit votes from the holders of Claims or Interests in Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), Class 5 (General Unsecured Claims), and Class 6 (Inter-Company Interests)[3] as each such classes are Unimpaired under the Plan and, therefore, deemed to accept the Plan. The Debtors also were not required to solicit votes from holders of Claims and Interests in Class 7(a) (Old WoundCo Common Stock), Class 7(b) (Other Old WoundCo Equity Interests), or Class 8 (Section 510(b) Claims), as such Classes are deemed to reject the Plan. As described in and as evidenced by the Solicitation Affidavit and the Notice of Commencement Affidavit, the transmittal and service of the Plan, the Disclosure Statement, the Ballots (all of the foregoing, the "**Solicitation Package**" and such transmittal of the

---

[3]    Class 6 (Inter-Company Interests) is comprised of both Impaired and Unimpaired Claims as the Debtors, may in their discretion and with the consent of the Requisite Consenting Lenders, elect to either (i) reinstate or (ii) cancel, release, and extinguish each of the Claims in this Class. Any reference to Class 6 herein incorporates the foregoing clarification.

Solicitation Package to the Voting Classes, the "**Solicitation**"), and the Combined Notice was timely, adequate, and sufficient under the circumstances. The Solicitation Package and Solicitation of votes on the Plan was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the Solicitation Procedures and Scheduling Order, the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, and regulations.

I.     Notice.  As is evidenced by the Notice of Commencement Affidavit, the Solicitation Affidavit, and the Publication Affidavit, all parties required to receive notice of the Solicitation Package and Combined Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any other applicable rules, laws, or regulations, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

J.     Plan Supplement.  On July 8, 2019, the Debtors filed the Initial Plan Supplement containing the following documents:  (i) the Amended and Restated By-Laws of Joerns WoundCo Holdings, Inc. (the "**Amended By-Laws**"); (ii) the Amended and Restated Certificate of Incorporation of Joerns WoundCo Holdings, Inc. (the "**Amended Certificate**"); (iii) the Stockholders' Agreement; (iv) the Exit Facility Credit Agreement; (v) the Initial Members of New WoundCo Board and Officers of Reorganized WoundCo; (vi) a Schedule of Rejected Contracts and Leases; and (vii) the Retained Causes of Action. On July 22, 2019, the Debtors filed the Amended Plan Supplement that amended the schedule of Initial Members of New WoundCo Board and the schedule of Causes of Action to be retained by the Debtors. All documents included

8

in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. The Debtors reserve the right to alter, amend, update, or modify the Plan Supplement and any schedules, exhibits or amendments thereto, prior to the Effective Date in accordance with the terms of the Plan and the Restructuring Support Agreement and subject to the terms of this Confirmation Order.

K.      Plan Modifications. Subsequent to the filing of the Plan, the Debtors agreed to make certain modifications to the Plan (the "**Plan Modifications**"), which are reflected in the redline of the Amended Plan against the Initial Plan filed with the Court on July 22, 2019 [D.I. 142]. The Plan Modifications were made to address objections and informal comments received from various parties-in-interest. The Plan Modifications do not materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan. The filing with the Court of the Amended Plan, Proposed Confirmation Order, and the disclosure of the Plan Modifications on the record at the Combined Hearing constitute due and sufficient notice thereof. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code. In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the Plan Modifications. No holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications. The Amended Plan shall constitute the Plan submitted for confirmation by the Court.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

L.      Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by

Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

i.      <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.    In addition to Administrative Expense Claims, Professional Claims, and Priority Tax Claims, which need not be classified, Article III classifies nine (9) Classes of Claims against and Interests in the Debtors.   The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class.   Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.   The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

ii.      <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>.   Article III of the Plan specifies that Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), Class 5 (General Unsecured Claims), and Class 6 (Inter-Company Interests) are unimpaired under the Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

iii.      <u>Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.   Article III of the Plan designates Class 3 (First Lien Claims), Class 4 (Second Lien Claims), Class 7(a) (Old WoundCo Common Stock), Class 7(b) (Other Old WoundCo Equity Interests), and Class 8 (Section 510(b) Claims) as impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

iv.      <u>No Discrimination (11 U.S.C. § 1123(a)(4))</u>.   The Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder

of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

        v.          <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>. The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation, (i) the entry into the Exit Facility, as set forth in the Exit Facility Documents, (ii) the authorization, issuance, and delivery of the New Common Stock, (iii) the continued corporate existence of, and vesting of assets in, the Reorganized Debtors, (iv) the cancellation of certain security interests, instruments, and other agreements, (v) the authorization of entry into the New Organizational Documents, (vi) the composition and selection of the board of directors and a list of officers of Reorganized WoundCo, and (vii) the taking of all necessary or appropriate actions by the Debtors or Reorganized Debtors, as applicable, to effectuate the Restructuring Transactions under and in connection with the Plan.

        vi.         <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C. § 1123(a)(6))</u>. The New Organizational Documents prohibit the issuance of non-voting equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code. The issuance of the New Common Stock complies with section 1123(a)(6) of the Bankruptcy Code. On the Effective Date, the New WoundCo Board shall be deemed to have adopted the New Organizational Documents.

        vii.        <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>. The Plan Supplement and Article IV.M of the Plan contain provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

viii.        Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. 1123(b)(1)). Pursuant to Article III of the Plan, as set forth in section 1123(b)(1) of the Bankruptcy Code, (a) Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), Class 5 (General Unsecured Claims), and Class 6 (Inter-Company Interests) are unimpaired and (b) Class 3 (First Lien Claims), Class 4 (Second Lien Claims), Class 7(a) (Old WoundCo Common Stock), Class 7(b) (Other Old WoundCo Equity Interests), and Class 8 (Section 510(b) Claims) are impaired.

ix.        Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article V of the Plan addresses the assumption and rejection of Executory Contracts and Unexpired Leases, and meets the requirements of section 365(b) of the Bankruptcy Code. The Debtors scheduled any Executory Contract or Unexpired Leases sought to be rejected in the Plan Supplement. There have been no objections to the Debtors' assumption of any of the Executory Contracts and Unexpired Leases pursuant to Article V of the Plan.

x.        Preservation of Rights of Action and Reservation of Rights (11 U.S.C. § 1123(b)(3)). Except as otherwise provided in the Plan, including, without limitation, Article VIII, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff, recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date. In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the following:  (a) the

Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, which shall be deemed released and waived by the Debtors and Reorganized Debtors as of the Effective Date, except for Causes of Action brought as counterclaims or defenses to claims asserted against the Reorganized Debtors and their Affiliates; and (b) all Causes of Action that arise under sections 544, 547, 548, and 549 of the Bankruptcy Code and state fraudulent conveyance law.

xi.    <u>Unaffected Rights of Holders of Classes of Claims (11 U.S.C. § 1123(b)(5))</u>. The Plan leaves unaffected the rights of holders of Claims in Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 5 (General Unsecured Claims). Thus, the Plan complies with section 1123(b)(5) of the Bankruptcy Code.

xii.    <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. The provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

xiii.    <u>Cure of Defaults (11 U.S.C. § 1123(d))</u>. Article V.C of the Plan provides for the satisfaction of default claims associated with each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All cure amounts will be determined in accordance with the underlying agreements and applicable non-bankruptcy law. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

M.    <u>The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code. Specifically: (i) Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code; and (ii) the Debtors have complied with all other applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and in transmitting the

Plan, the Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices, and in soliciting and tabulating the votes on the Plan, the Debtors have complied with the applicable provisions of the Bankruptcy Code (including sections 1125 and 1126(b)), the Bankruptcy Rules, the Local Bankruptcy Rules, applicable non-bankruptcy law, the Scheduling Order, and all other applicable law.

          N.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan (and all documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the Combined Hearing and other proceedings held in these Chapter 11 Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors. The Plan (including all documents necessary to effectuate the Plan) was negotiated at arm's length among representatives of the Debtors, the Consenting Lenders, the First Lien Agent, and the Second Lien Agent (the "**Restructuring Support Parties**"), and their respective professionals. Each of the Restructuring Support Parties supports confirmation of the Plan. Further, the Plan's classification, indemnification, exculpation, release, discharge, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 524, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

          O.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with their Chapter 11 Cases, or in connection with the Plan and

incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code. As set forth in the Restructuring Term Sheet as Exhibit B to the Restructuring Support Agreement, the DIP Orders, and applicable engagement letters, as part of the negotiated terms on which the Debtors and the Restructuring Support Parties agreed to proceed with the consensual, prepackaged restructuring reflected in the Plan, the Debtors have agreed to pay all the reasonable and documented fees and expenses of (a) Ankura Trust Company, LLC, as the First Lien Agent and DIP Agent, (b) Shearman & Sterling LLP, as primary counsel for the First Lien Agent and the DIP Agent, (c) one local counsel of the First Lien Agent and DIP Agent, (d) King & Spalding LLP, as primary counsel for the First Lien Steering Committee and DIP Lender, (e) one local counsel of the First Lien Steering Committee and DIP Lenders, (f) FTI Consulting, as financial advisor to the First Lien Steering Committee, (g) Proskauer Rose LLP, as primary counsel to PineBridge, (h) Landis Rath & Cobb LLP, as local counsel to PineBridge, and (i) Wachtell Lipton Rosen & Katz, as primary counsel to Cetus, and such fees and expenses shall be paid in full, in Cash on or before the Effective Date in accordance with the DIP Order, the Restructuring Support Agreement, the Plan and/or as required by the applicable underlying credit agreement, indemnity, or fee letter, without application or approval by the Court; *provided, however*, that notwithstanding anything to the contrary in this Confirmation Order, the DIP Orders, or the Restructuring Support Agreement, payments for the reasonable and documented fees of the parties listed in clauses (g) through (i) of this paragraph shall not exceed $374,000.00 in the aggregate. The payment of such fees is fair and

reasonable, integral to the agreement among the Restructuring Support Parties, and necessary to the Debtors' successful reorganization.

      P.      <u>Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))</u>. The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors upon the Effective Date of the Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against the Debtors and with public policy. Each such member will serve in accordance with the terms and subject to the conditions of the New Organizational Documents, and other relevant organizational documents, each as applicable. The directors and officers of the Reorganized Debtors shall be selected according to the procedures set forth in the Plan.

      Q.      <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for rate changes by any of the Reorganized Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

      R.      <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement and other evidence proffered or adduced at the Combined Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

S.      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Class 1 (Other Secured Claims), Class 2 (Priority Non-Tax Claims), Class 5 (General Unsecured Claims), and Class 6 (Inter-Company Interests) are Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 7(a) (Old WoundCo Common Stock), Class 7(b) (Other Old WoundCo Equity Interests), and Class 8 (Section 510(b) Claims) are Classes of Impaired Claims or Interests that are conclusively presumed to have rejected the Plan in accordance with section 1126(g) of the Bankruptcy Code.  Class 3 (First Lien Claims) and Class 4 (Second Lien  Claims) are Classes of Impaired Claims that have voted to accept the Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors.

T.      Treatment of Administrative Expense Claims, Professional Claims, Priority Tax Claims, and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Allowed Administrative Expense Claims and Professional Claims, pursuant to Article II.A and Article II.B, respectively, of the Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Article II.D of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.  The treatment of Priority Non-Tax Claims pursuant to Article III.B.2 of the Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code.  Pursuant to the Plan, no holder of an Administrative Expense Claim is required to file a proof of claim or request for payment of an administrative expense under section 503(b) of the Bankruptcy Code.  On the Effective Date or as soon thereafter as such Allowed Administrative Expense Claims become due and payable according to their terms, unless otherwise agreed to by the holder of an Allowed Administrative Expense Claim and the Debtors or Reorganized Debtors, each holder of an Allowed Administrative Expense Claim will

receive in full and final satisfaction, settlement, release, and discharge of, and, in exchange for, such holder's Administrative Expense Claim (i) Cash equal to the unpaid amount of such Allowed Administrative Expense Claim, or (ii) treatment as is consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

U.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Class 3 (First Lien Claims) and Class 4 (Second Lien Claims) are Classes of Impaired Claims that have voted to accept the Plan by the requisite majorities set forth in the Bankruptcy Code, determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

V.    Feasibility (11 U.S.C. § 1129(a)(11)).  The information in the Disclosure Statement, the Regan Declaration, and the Graber Declaration, and the evidence proffered or adduced at the Combined Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that the Plan is feasible and that there is a reasonable prospect of the Reorganized Debtors being able to meet their financial obligations under the Plan and their business in the ordinary course, and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

W.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees currently payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Article II.A of the Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

X.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Except as otherwise provided herein, on and after the Effective Date, and, without limiting any authority

provided to the New WoundCo Board under the Debtors' respective formation and constituent documents, the Reorganized Debtors shall: (a) amend, adopt, assume, and/or honor in the ordinary course of business, any and all contracts, agreements, policies, programs, and plans, in accordance with their respective terms, for, among other things, compensation, employment, severance and bonuses, including any incentive plans (including any assumed incentive plans) and contracts (other than any equity incentive plan (if any) or other prepetition senior management incentive plan, which in each case shall be replaced by the Management Incentive Plan), health care benefits, disability benefits, deferred compensation benefits, savings, severance benefits, bonuses, severance, retirement benefits, welfare benefits, workers' compensation insurance, and accidental death and dismemberment insurance for the directors, officers, and employees of any of the Debtors who served in such capacity from and after the Petition Date; and (b) honor, in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time arising prior to the Petition Date and not otherwise paid pursuant to a Bankruptcy Court order. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.  For the avoidance of any doubt, any and all employment-related agreements, contracts, writings, and arrangements (including bonus and severance agreements) shall be assumed and shall become obligations of the Reorganized Debtors on the Effective Date (with transaction and change of control bonuses being earned as of the Effective Date), shall remain in place following the Effective Date, and shall be satisfied in accordance with their terms by the Reorganized Debtors on and after the Effective Date. The Plan therefore satisfies section 1129(a)(13) of the Bankruptcy Code.

Y.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z.    Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA.    No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtors are each a moneyed, business, or commercial corporation, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.    No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). Class 7(a) (Old WoundCo Common Stock), Class 7(b) (Other Old WoundCo Equity Interests), and Class 8 (Section 510(b) Claims) are deemed to have rejected the Plan. Based upon the evidence proffered, adduced, and presented by the Debtors at the Combined Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no holder of any interest that is junior to each such Class will receive or retain any property under the Plan on account of such junior interest, and no holder of a Claim or Interest in a Class senior to such Classes is receiving more than 100% recovery on account of its Claim or Interest. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by these Classes.

CC.    Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

DD.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Plan on any such grounds.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE.    <u>Small Business Case (11 U.S.C. § 1129(e))</u>. Section 1129(e) is inapplicable because these Chapter 11 Cases do not qualify as small business cases thereunder.

FF.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the Combined Hearing, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein as Exculpated Parties, the exculpation provisions set forth in Article VIII.C of the Plan.

GG.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the

Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

HH.    <u>Likelihood of Satisfaction of Conditions Precedent to the Effective Date</u>.

Each of the conditions precedent to the Effective Date, as set forth in the Plan, has been or is

reasonably likely to be satisfied or waived in accordance with the Plan.

II.    <u>General Settlement of Claims and Interests</u>.  The general compromise and

settlement of Claims and Interest and controversies incorporated in the Plan, as set forth in Article

IV.A, is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and

is fair, equitable, and an appropriate exercise of the Debtors' business judgment.

JJ.    <u>Implementation</u>.  The Plan Transaction Documents are essential elements

of the Plan, and entry into each such Plan Transaction Document is in the best interests of the

Debtors, the Estates, and holders of Claims.  The Debtors have exercised reasonable business

judgment in deciding to enter into the Plan Transaction Documents, and all such Plan Transaction

Documents, including the fees, expenses, and other payments set forth therein have been

negotiated in good faith and at arm's length, are supported by reasonably equivalent value and fair

consideration, and shall, upon completion of documentation and execution, be valid, binding, and

enforceable agreements.

KK.    <u>Releases, Exculpation, and Injunction</u>.  The Court has jurisdiction to

approve the releases, exculpation, and injunctions set forth in Articles VIII.A, B, C, and D of the

Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of

the releases set forth in Articles VIII.B and Article VIII.D of the Plan, respectively, if, as has been

established here, based upon the record in the Chapter 11 Cases and the evidence presented at the

Combined Hearing, such provisions (i) were integral to the agreement among the various parties

in interest, as reflected in the Restructuring Support Agreement, and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their estates, and parties in interest. The releases contained in Article VIII.B of the Plan were disclosed and explained in the Combined Notice, the Ballots, and the Disclosure Statement. The releases contained in Article VIII.B of the Plan are consensual under applicable law because the releases therein are provided only by (i) holders of Claims that are Unimpaired, subject to paragraph 38 below, and (ii) holders of Impaired Claims and Interests entitled to vote on the Plan who (a) voted to accept the Plan, (b) did not vote on the Plan, or (c) voted to reject the Plan and did not check the opt-out box. *See In re Indianapolis Downs, LLC,* 486 B.R. 286, 303 (Bankr. D. Del. 2013); *see also In re New Gulf Res., LLC*, No. 15-12566 (BLS) (Bankr. D. Del. Apr. 20, 2016); *In re Am. Apparel, Inc.,* No. 15-12055 (BLS) (Bankr. D. Del. Jan. 27, 2016) [D.I. 687]; *In re Heartland Publications, LLC, et al,* No. 09-14459 (KG) (Bankr. D. Del. Apr. 16, 2010) [D.I. 244] (confirming plan providing that any party that fails to opt out on its ballot is deemed to provide a release). Additionally, all parties in interest received the Combined Notice, which clearly stated that unless they objected, they would be deemed to have consented to the releases. Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the releases, exculpation, and injunctions set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors and the Reorganized Debtors and their estates, creditors, and equity holders. The releases of non-Debtors under the Plan are fair to holders of Claims and Interests and are necessary to the proposed reorganization, thereby satisfying the applicable standards contained in *In re Indianapolis Downs,* 486 B.R. at 303, and are otherwise appropriate under *In re W.R. Grace &*

*Co.,* 475 B.R. 34, 107 (D. Del. 2012). Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases, including the substantial contributions of the First Lien Lenders and DIP Lenders in providing $40 million in new money under the DIP Facility, providing the Exit Facility, becoming Restructuring Support Parties and supporting the Plan, and providing the releases in accordance therewith. The record of the Combined Hearing and these Chapter 11 Cases is sufficient to support the releases, exculpation, and injunctions contained in Articles VIII.A, B, C, and D of the Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Combined Hearing, this Court finds that the releases, exculpation, and injunctions set forth in Article VIII of the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the releases, exculpation, and injunctions would seriously impair the Debtors' ability to confirm the Plan.

LL.     Good Faith. The Debtors and the Released Parties will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions, and transfers set forth therein and (ii) take any actions authorized and directed by this Confirmation Order.

MM.     Retention of Jurisdiction. The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Plan and section 1142 of the Bankruptcy Code, *provided, however*, that on and after the Effective Date, this Court shall not retain exclusive jurisdiction over any disputes, rights, claims, interests, or controversies under the Exit Facility or the exercise of the respective rights and remedies of parties thereunder.

NN.    <u>Exit Facility Documents</u>.  The Exit Facility is an essential element of the Plan.  The terms of the Exit Facility Documents were negotiated at arm's length and in good faith and without intent to hinder, delay, or defraud any creditor of the Debtors and are in the best interests of the Debtors, the Reorganized Debtors, the Estates, and creditors.  The entry into the Exit Facility by the Reorganized Debtors and the execution, delivery, or performance by the Debtors or the Reorganized Debtors, as the case may be, of the Exit Facility Documents and granting of liens thereunder, and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof are authorized by this Confirmation Order.

OO.    <u>New Common Stock Documents</u>.  The New Common Stock Documents are an essential element of the Plan.  The terms of the New Common Stock Documents were negotiated at arms' length, in good faith, and without intent to hinder, delay, or defraud any creditor of the Debtors and are be in the best interests of the Debtors, the Reorganized Debtors, the Estates, and their creditors.  The issuance of the New Common Stock by the Reorganized Debtors and the execution, delivery, or performance by the Debtors or the Reorganized Debtors, as the case may be, of the Stockholders' Agreement and the New Common Stock Documents, and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof are authorized by this Confirmation Order.

PP.    <u>First Lien Agent, Second Lien Agent, and DIP Agent</u>.  Based upon a review of the record, the First Lien Agent, the Second Lien Agent, and the DIP Agent, each, diligently and in good faith, discharged its duties and obligations pursuant to the First Lien Credit Agreement, the Second Lien Note Purchase Agreement, and the DIP Credit Agreement, as applicable, and otherwise conducted itself with respect to all matters in any way relating to the First Lien Credit Agreement, the Second Lien Note Purchase Agreement, and the DIP Credit Agreement, as

applicable, with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs. Accordingly, subject to any obligation to make post-Effective Date distributions or take such other action, if any, pursuant to the Plan on account of the Allowed DIP Claims, Allowed First Lien Claims, or Allowed Second Lien Claims, as applicable, and to otherwise exercise their rights and discharge their obligations (if any) relating to the Claims arising under their respective debt instruments in accordance with the Plan, the First Lien Agent, the Second Lien Agent, and the DIP Agent each has discharged its duties fully in accordance with the First Lien Credit Agreement, the Second Lien Note Purchase Agreement, and the DIP Credit Agreement, as applicable.

QQ. <u>Exit Fee</u>. The Exit Fee is an essential element of the Plan. The terms of the Exit Fee were negotiated at arms' length and in good faith and without intent to hinder, delay, or defraud any creditor of the Debtors, and represents an exercise of the Debtors' prudent business judgment consistent with their fiduciary duties, and payment of the Exit Fee is in the best interests of the Debtors, the Reorganized Debtors, the Estates, and their creditors and will be deemed not to constitute a fraudulent conveyance, fraudulent transfer, preferential transfer and will not otherwise be subject to avoidance, recharacterization, or equitable subordination for any purpose whatsoever under the Bankruptcy Code or any applicable non-bankruptcy law.

RR. <u>New Organizational Documents</u>. The New Organizational Documents are necessary to the consummation of the Plan and the operation of the Reorganized Debtors. The Amended By-laws and Amended Certificate, attached as Exhibits A and B to the Plan Supplement are in the best interests of the Debtors, the Reorganized Debtors, the Estates, and their creditors. The terms of the Amended By-Laws and the Amended Certificate are the result of good faith, arm's length negotiations and are appropriate and consistent with the applicable provisions of the

Bankruptcy Code and the Bankruptcy Rules, including sections 1123, 1129, and 1142 of the Bankruptcy Code, and are necessary to the Debtors' successful emergence from chapter 11.

SS.     Liquidation Analysis.  The Liquidation Analysis set forth in the Disclosure Statement and the Graber Declaration, which the Court has determined to be credible, persuasive, and based on appropriate assumptions and valid analysis and methodology, demonstrates that Debtors' creditors and equityholders will receive a greater distribution under the Plan than a hypothetical liquidation under chapter 7 of the Bankruptcy Code.

TT.     Valuation.   Based on the valuation analysis set forth in the Disclosure Statement and the Klein Declaration, which the Court has determined to be credible, persuasive, and based on appropriate assumptions and valid analysis and methodology, the Court finds that the valuation implied by the Restructuring Transactions is the best measure of the Reorganized Debtors' value given the facts and circumstances of these Chapter 11 Cases.

## ORDER

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.     Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.   To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.     Combined Hearing on Approval of Disclosure Statement and Confirmation of Plan. In light of the fact that (i) the Plan provides that all Allowed Class 5 (General Unsecured Claims) are unimpaired under section 1124 of the Bankruptcy Code, (ii) there is overwhelming acceptance from the Voting Classes, and (iii) the Debtors' need to normalize trade credit as quickly as possible,

it was appropriate to hold a Combined Hearing on shortened notice on the Debtors' request for approval of the Disclosure Statement and Solicitation Procedures, and confirmation of the Plan under sections 105(d)(2)(B)(vi) and 1125(g), Bankruptcy Rule 3018(b), and the Guidelines.

3.     Notice of the Combined Hearing.  The Combined Notice, and service thereof, complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

4.     Solicitation.   The Solicitation on the Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable non-bankruptcy law.

5.     Ballots.   The forms of Ballots annexed to the Solicitation Affidavit are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects.

6.     Disclosure Statement.  The Disclosure Statement (i) contains information of a kind generally consistent with the disclosure requirements of applicable non-bankruptcy law (including the Securities Act), (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Plan, and the transactions contemplated therein, and (iii) is approved in all respects.  To the extent that the Debtors' Solicitation prior to the Petition Date is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under Section 4(a)(2) of the Securities Act and Regulation D thereunder. Section 4(a)(2) of the Securities

Act exempts from the registration provisions under the Securities Act any transaction "by an issuer not involving any public offering." 15 U.S.C. § 77d(2). Regulation D promulgated under the Securities Act similarly exempts from the registration provisions under the Securities Act offerings of securities to "accredited investors" (as such term is defined under Regulation D) ("accredited investors"), and a limited number of other investors. 17 C.F.R. §230.501 *et. seq.* The Debtors took steps to ensure that the prepetition solicitation of acceptances of holders of Claims entitled to vote on the Plan was made only to those holders who are "Qualified Institutional Buyers" (as defined in Rule 144(a) of the Securities Act) ("QIB") or accredited investors. As a result of the foregoing, there was no general solicitation in connection with the solicitation of acceptances of the Plan. In addition, 100% of holders of Claims entitled to vote on the Plan signed the Restructuring Support Agreement in which each such creditor certified that it is an accredited investor, a QIB or non-U.S. person under Regulation S under the Securities Act. As such, the Debtors' solicitation did not constitute a public offering because it falls within the exemption under Section 4(a)(2) of the Securities Act. Accordingly, the Disclosure Statement is hereby **APPROVED** as providing holders of Claims entitled to vote on the Plan with adequate information to make an informed decision as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.

7. <u>Confirmation of the Plan</u>. The Plan and each of its provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The terms of the Plan, including the Plan Supplement, are incorporated by reference into and are an integral part of this Confirmation Order.

8. <u>Objections</u>. All objections, responses to, and statements and comments, if any, in opposition to, the Plan and/or the Disclosure Statement, respectively, other than those resolved or

29

withdrawn with prejudice in their entirety prior to, or on the record at, the Combined Hearing, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

9.     <u>No Action</u>.  Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware, other applicable non-bankruptcy law, and section 1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

10.     <u>General Settlement of Claims and Interests</u>.  The good faith compromise and settlement of Claims and Interests and controversies incorporated into the Plan, including as set forth in the Restructuring Support Agreement and subject to Article IV.A of the Plan is hereby approved in all respects.

11.     <u>Sources of Consideration for Plan Distributions</u>.  All consideration necessary for the Reorganized Debtors to make distributions pursuant to the Plan shall be obtained from existing Cash balances of the Debtors, the proceeds of the Exit Facility, and the issuance of New Common Stock.

12.     <u>Authorization to Consummate</u>.  The Debtors are authorized to consummate the Plan after the entry of this Confirmation Order subject to satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in the Plan.

13.     <u>Exit Facility Documents</u>.  The Exit Facility, and all transactions contemplated thereby, including any actions to be taken, any undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees,

indemnities, and expenses provided therein are approved in all respects. The Debtors and Reorganized Debtors, as applicable, are authorized and empowered to enter into and execute, without further approval of this Court or any other party, and without the need for any further corporate action, the Exit Facility Documents in accordance with the Plan. The loans and other extensions of credit contemplated by the Exit Facility Credit Agreement and the granting of Liens to secure such loans and other extensions of credit are approved and authorized in all respects. The holders of Liens under the Exit Facility Documents are authorized to file, with the appropriate authorities, financing statements and other documents (the "**Exit Facility Perfection Documents**") or take any other action in order to evidence, validate, and perfect such Liens or security interests. The granting of such Liens and security interests, the making of such loans and other extensions of credit, the payment of any fees contemplated thereunder, and the execution and consummation of the Exit Facility Documents and the Exit Facility Perfection Documents have been and are being undertaken in good faith, for legitimate business purposes, and for reasonably equivalent value, will be deemed not to constitute a preference, fraudulent conveyance, or fraudulent transfer, and will not otherwise be subject to avoidance, recharacterization, disallowance, reduction, subordination (whether equitable, contractual, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any Person or entity. All fees, costs, and indemnities required to be paid under the Exit Facility Credit Agreement, including all fees, costs, expenses, and indemnities payable, shall be paid by the Reorganized Debtors without further order of the Court. As of the Effective Date, and regardless of whether the Exit Facility Perfection Documents are filed prior to, on, or after the Effective Date: (i) the Liens and security interests granted pursuant to the Exit Facility Documents and Exit

Facility Perfection Documents will constitute legal, valid, and enforceable Liens and security interests in the collateral granted thereunder in accordance with the terms of the Exit Facility Documents; (ii) the Liens and security interests granted under or in connection with the Exit Facility Documents will become or continue to be, as applicable, valid, binding, and enforceable obligations of the Reorganized Debtors; and (iii) the Liens and security interests granted under or in connection with the Exit Facility Documents shall be automatically perfected by virtue of entry of this Confirmation Order, subject only to such Liens and security interests as may be permitted under the Exit Facility Documents under the Bankruptcy Code or any applicable non-bankruptcy law. Each of the Debtors, the Reorganized Debtors, and the persons and Entities granted such Liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order, and are authorized to cooperate and make all other filings and recordings that otherwise would be reasonably necessary under applicable law to perfect and/or give notice of such Liens and security interests to third parties. In the event an order dismissing any of these Chapter 11 Cases is at any time entered, the liens securing the Exit Facility shall not be affected and shall continue in full force and effect in all respects and shall maintain their priority and perfected status as provided in the Exit Facility Documents until all obligations in respect thereof have been paid and satisfied in full in cash.

14.    Issuance of New Common Stock.  All existing Interests in WoundCo (including Old WoundCo Common Stock) shall be cancelled as of the Effective Date, and Reorganized WoundCo is authorized to issue the New Common Stock pursuant to the Plan. The issuance of

the New Common Stock (including for the Backstop Commitment Fee and New Common Stock reserved under the Management Incentive Plan) is authorized without the need for (a) any further order of this Court, (b) any corporate or limited liability company actions, and (c) any further action by the holders of Claims or Interests or the Debtors or the Reorganized Debtors, as applicable. The New Common Stock Documents are approved in all respects. The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Court or any other party, to finalize, execute, and deliver the New Common Stock Documents and to take such other actions as reasonably deemed necessary to perform their obligations thereunder. Upon the Effective Date, each of the New Common Stock Documents shall have been adopted and shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of New Common Stock shall be bound thereby. Any New Common Stock that is issued under the Plan (and in accordance with the New Common Stock Documents) is hereby duly authorized and validly issued, and the holders of Allowed First Lien Claims and Allowed Second Lien Claims that will receive New Common Stock shall not be required to execute any of the New Common Stock Documents before receiving their respective distribution of New Common Stock under the Plan. Holders of Allowed First Lien Claims and Allowed Second Lien Claims that receive New Common Stock shall be automatically deemed to have executed and accepted the terms of each such New Common Stock Document (in such person's capacity as an equity holder of Reorganized WoundCo) and to be party thereto without further action. Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

15.    <u>Payment of Fees and Expenses of the First Lien Steering Committee's, Second Lien Lenders', and the DIP Lenders' Professionals</u>.  Notwithstanding anything to the contrary herein, the unpaid reasonable and documented fees and expenses of (a) Ankura Trust Company, LLC, as the First Lien Agent and DIP Agent (b) Shearman & Sterling LLP, as primary counsel for the First Lien Agent and the DIP Agent, (c) one local counsel of the First Lien Agent and DIP Agent, (d) King & Spalding LLP, as primary counsel for the First Lien Steering Committee and DIP Lenders, (e) one local counsel of the First Lien Steering Committee and certain DIP Lenders, (f) FTI Consulting, as financial advisor to the First Lien Steering Committee, (g) Proskauer Rose LLP, as primary counsel to PineBridge, (h) Landis Rath & Cobb LLP, as local counsel to PineBridge, and (i) Wachtell Lipton Rosen & Katz, as primary counsel to Cetus shall, in each case, be paid in full, in Cash on or before the Effective Date in accordance with the DIP Order, the Restructuring Support Agreement, the Plan and/or as required by the applicable underlying DIP Document or indemnity, without application or approval by the Court; *provided, however*, that notwithstanding anything to the contrary of this Confirmation Order, the DIP Orders or the Restructuring Support Agreement, payments for reasonable and documented fees of the parties listed in clauses (g) through (i) of this paragraph shall not exceed $374,000.00 in the aggregate.

16.    <u>Exit Fee</u>.  The Exit Fee is hereby approved and, on the Effective Date, the Debtors or Reorganized Debtors are authorized to pay the Exit Fee to the DIP Lenders, with each DIP Lender receiving a Pro Rata share of Exit Tranche A Facility Loans equal to 2.0% of the aggregate DIP Loans that are outstanding as of the Effective Date.

17.    <u>Exemption from Registration Requirements</u>.    The offering, issuance, and distribution of any Securities, including the New Common Stock and the New Common Stock associated with the Management Incentive Plan pursuant to the Plan shall be exempt from the

registration requirements of section 5 of the Securities Act pursuant to section 1145 of the Bankruptcy Code or any other available exemption from registration under the Securities Act, as applicable.  Pursuant to section 1145 of the Bankruptcy Code, the New Common Stock issued under the Plan will be freely transferable under the Securities Act by recipients thereof, subject to: (a) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act and compliance with any applicable state or foreign securities laws, if any, and the rules and regulations of the United States Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments; (b) the New Common Stock Documents; and (c) any other applicable regulatory approval.  The Reorganized Debtors will not be reporting companies under the Securities Exchange Act of 1934, the Reorganized Debtors will not be required to and will not file reports with the SEC or any other entity or party, and the Reorganized Debtors will not be required to file monthly operating reports with the Bankruptcy Court after the Effective Date.

18.    <u>Vesting of Assets in the Reorganized Debtors</u>.  Except as otherwise provided in the Plan (including, for the avoidance of doubt, the Restructuring Transactions), or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided herein, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the

U.S. Trustee (except for quarterly operating reports and fees associated therewith until the closing of each respective Chapter 11 Case).

19.     <u>Cancellation of Notes, Instruments, Certificates, and Other Documents</u>.  Except with respect to assumed Executory Contracts and Unexpired Leases and to the extent provided herein, all notes, instruments, Certificates, plans, agreements, and other documents evidencing any Claim or Interest (other than certain Inter-Company Interests that are not modified by the Plan) and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect and the obligations of the Debtors thereunder shall be deemed fully satisfied, released, and discharged.  The holders of or parties to such cancelled instruments, Securities, and other documentation shall have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan. Notwithstanding such cancellation and discharge, any credit document or agreement that governs the rights of the holder of a Claim or Interest shall, subject to the terms of the Plan, continue in effect solely for the purposes of (i) allowing holders of Allowed Claims to receive distributions under the Plan, (ii) allowing the DIP Agent, First Lien Agent, and the Second Lien Agent to (a) enforce any indemnity obligations and other obligations owed to each of them under the Plan, (b) take any actions contemplated by the Plan, and (c) appear in the Chapter 11 Cases or any proceeding in which they are or may become a party, and (iii) allowing beneficiaries of any Indemnification Provisions to be indemnified; *provided further* for the avoidance of doubt, and notwithstanding any provisions of the Plan or this Confirmation Order to the contrary, no rights or protections (including any indemnification, reimbursement, or exculpation rights) of the First Lien Agent, Second Lien Agent, or DIP Agent under the First Lien Credit Agreement, Second Lien

Note Purchase Agreement, or DIP Credit Agreement, as applicable, shall be enjoined, released, or discharged.

20.    <u>New Organizational Documents</u>.  The Debtors and the Reorganized Debtors, as applicable, are authorized, without further approval of the Court or any other party, to execute and deliver all new formation, organizational, constituent documents as may be necessary to effectuate the transactions contemplated by the Plan and the Restructuring Support Agreement.  The Amended Certificate, and the terms governing the issuance of the New Common Stock, comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are hereby approved.  The adoption and filing of the Amended Certificate is hereby authorized, ratified, and approved.  The Debtors have complied in all respects, to the extent necessary, with section 1123(a)(6) of the Bankruptcy Code.

21.    <u>Effectuating Documents; Further Transactions</u>.  On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Support Agreement, the Exit Facility Documents, the New Organizational Documents, the New Common Stock issued pursuant to the Management Incentive Plan and/or to the holders of New Common Stock, and any other Securities issued pursuant to the Plan in the name of and on behalf of Reorganized WoundCo and any other Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

22.    <u>Section 1146(a) Exemption</u>.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other person) of property under the Plan or pursuant to:  (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other Interest in the Debtors or the Reorganized Debtors; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security for any or all of the Exit Facility; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the

foregoing instruments or other documents without the payment of any such tax or governmental assessment.

23.    <u>Directors and Officers</u>.    On the Effective Date, the initial board of managers/directors of the Reorganized Debtors shall be consistent with the terms of the Plan (including the Plan Supplement) and the terms of the applicable Amended By-Laws and Amended Certificate.  Such appointment and designation is hereby approved and ratified as being in the best interests of the Debtors and creditors and consistent with public policy, and such directors hereby are deemed elected and appointed to serve in their respective capacities as of the Effective Date without further action of the Court, the Reorganized Debtors, or their security holders.

24.    <u>Restructuring Transactions</u>.    Prior to or on the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan and this Confirmation Order.

25.    <u>Administrative Expense Claims</u>.    On the Effective Date or as soon thereafter as such Allowed Administrative Expense Claims become due and payable according to their terms, unless otherwise agreed to by the holder of an Allowed Administrative Expense Claim and the Debtors (with the reasonable consent of the Requisite Consenting First Lien Lenders) or the Reorganized Debtors, as applicable, each holder of an Allowed Administrative Expense Claim (other than holders of Professional Claims, DIP Claims, and Priority Tax Claims) shall receive in full and final satisfaction, settlement, release, and discharge of, and, in exchange for, such holder's Administrative Expense Claim (i) an amount of Cash equal to the unpaid amount of such Allowed

Administrative Expense Claim, or (ii) receive treatment as is consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

26.    <u>Professional Claims</u>.  All Professionals or other Entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code for services rendered before the Effective Date (including any compensation requested by any Professional or any other Entity for making a substantial contribution in the Chapter 11 Case) shall file and serve final requests for payment of Professional Claims no later than the first Business Day that is forty-five (45) days after the Effective Date.  Objections to any Professional Claim must be filed and served on the Reorganized Debtors and the applicable Professional within thirty (30) days after the filing of the final fee application with respect to the Professional Claim.  Any such objections that are not consensually resolved may be set for hearing on twenty-one (21) days' notice by the Professional asserting such Professional Claim.  The Reorganized Debtors shall pay Claims in Cash in the amount the Court allows, including from the Professional Fee Escrow Account, which the Reorganized Debtors will establish in trust for the Professionals and fund with Cash equal to the Professional Fee Amount on the Effective Date. Professionals shall deliver to the Debtors their estimates for purposes of the Reorganized Debtors computing the Professional Fee Amount no later than three (3) Business Days prior to the anticipated Effective Date.  For the avoidance of doubt, no such estimate shall be deemed to limit the amount of the fees and expenses that are the subject of a Professional's final request for payment of Professional Claims filed with the Court.  If a Professional does not provide an estimate, the Debtors are authorized to estimate the unpaid and unbilled fees and expenses of such Professional.  No funds in the Professional Fee Escrow Account shall be property of the Estates. Any funds remaining in the Professional Fee Escrow Account after all Allowed Professional

Claims have been paid shall be turned over to the Reorganized Debtors. From and after entry of this Confirmation Order, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

27.    <u>Treatment of DIP Claims</u>.  On the Effective Date, the DIP Claims shall be Allowed in full, in the aggregate principal amount of $80 million (less any amounts paid prior to the Effective Date) plus all accrued and unpaid postpetition interest under the DIP Credit Agreement (and any unpaid fees, costs, and expenses) and the Exit Fee.  On the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim, each holder of an Allowed DIP Claim shall receive (i) on account of its Allowed New Money DIP Claims, its Pro Rata share of the Exit Tranche A Facility Loans (excluding the Exit Fee) and (ii) on account of its Allowed Roll-Up DIP Facility Claims, its Pro Rata share of the Exit Tranche B Facility Loans.

28.    <u>Priority Tax Claims</u>.  On the Effective Date, except to the extent that a holder of an Allowed Priority Tax Claim and the Debtors (with the reasonable consent of the Requisite Consenting First Lien Lenders) or the Reorganized Debtors, as applicable, agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, holders of Allowed Priority Tax Claims shall receive interest

on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

29.    <u>Subordination</u>.    Except as otherwise expressly provided in the Plan, any Plan Transaction Document, this Confirmation Order, or a separate order of this Court, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions under the Plan take into account and conform to the relative priority and rights of Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.    Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtors reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

30.    <u>Executory Contracts and Unexpired Leases</u>.    In accordance with Article V of the Plan, as of the Effective Date, each Executory Contract and Unexpired Lease that has not otherwise been rejected (by an exhibit to the Plan Supplement) shall be deemed assumed without the need for any further notice to or action, order, or approval of the Court, subject to Article V.A.    The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates, and any such assumptions and assignments are hereby approved. The rejection of any contracts or leases identified on the Schedule of Rejected Contracts and Leases is hereby approved.    Except as otherwise provided herein, in the Plan, or agreed to by the Debtors, the Requisite Consenting First Lien Lenders, and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of

first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith.

31.   Indemnification.   On and as of the Effective Date, the Indemnification Provisions are assumed and irrevocable and shall survive the effectiveness of the Plan, and the Reorganized Debtors' governance documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtors' and the Reorganized Debtors' current and former directors, officers, employees, and agents to the fullest extent permitted by law and at least to the same extent as the organizational documents of each of the respective Debtors as in effect as of the Petition Date, against any claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Reorganized Debtors will amend and/or restate their respective governance documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtors' obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights.

32.   Insurance Policies.   Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall constitute Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims.

33.  <u>Compensation and Benefit Plans</u>.  As of the Effective Date, unless specifically rejected by a Final Order of the Court or otherwise specifically provided for herein, all employment and severance policies, workers' compensation programs, and all compensation and benefit plans, policies, and programs of the Debtors applicable to its present and former employees, officers, and directors, including all health care plans, disability plans, severance benefit plans, and incentive plans, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are deemed assumed under the Plan, and the Debtors' obligations under such plans, policies, and programs, shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, survive confirmation of the Plan, remain unaffected thereby, and not be discharged in accordance with section 1141 of the Bankruptcy Code.  Any defaults existing under any of such plans, policies, and programs shall be cured promptly after they become known by the Reorganized Debtors.

34.  <u>Reservation of Rights</u>.  Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have forty-five (45) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

35.  <u>Discharge</u>.  Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or this Confirmation Order, or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature

44

whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the holder of such a Claim or Interest has accepted the Plan. This Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

36.  <u>Releases by the Debtors.</u> Notwithstanding anything contained in the Plan to the contrary (other than with respect to the Debtors and the Reorganized Debtors as provided in Articles I.A.3(proviso only), IV.O(a), V.I, VI.D, VI.E, VI.F, and VII.B of the Plan), pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released by the Debtors, the Reorganized Debtors, and their Estates (in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Entities that may purport to assert any Causes of Action derivatively, by or through the foregoing Entities) from any and all Causes of Action, including

any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Disclosure Statement, the Plan, the DIP Facility, the DIP Documents, the Exit Facility, the Exit Facility Documents, or any Restructuring Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of the DIP Facility, the pursuit of the Exit Facility, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of the New Common Stock pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (i) any Released Party from any Causes of Action arising from or related to any act or omission by such Released Party that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; (ii) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (iii) any rights of the First Lien Agent or DIP Agent to enforce its respective rights under the Plan

or the Confirmation Order. Nothing in this section shall affect the rights of the Reorganized Debtors in respect of any Unimpaired Claim, including any and all rights in respect of legal and equitable defenses to, or setoffs or recoupment against, any such Unimpaired Claim.

37.    <u>Releases by Holders of Claims and Interests</u>. Notwithstanding anything contained in the Plan to the contrary (other than, with respect to releases by the Debtors and the Reorganized Debtors, as provided in Articles I.A.3(proviso only), IV.O(a), V.I, VI.D, VI.E, VI.F, and VII.B of the Plan), as of the Effective Date, for good and valuable consideration, each Releasing Party is deemed to have released each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including management, ownership, or operation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the DIP Facility, the DIP Documents, the Disclosure Statement, the Plan, the Exit Facility, the Exit Facility Documents, or any Restructuring Transaction, contract, instrument, release, or other Plan Transaction Document, agreement, or document created or entered into in connection with the Restructuring Support Agreement, the DIP Facility, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of the DIP Facility, the pursuit of the Exit Facility, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of the New Common Stock pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the

Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (i) any Released Party from any Causes of Action arising from or related to any act or omission by such Released Party that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; (ii) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (iii) any rights of the First Lien Agent or DIP Agent to enforce its respective rights under the Plan or the Confirmation Order.

38.     _Releases by Class 5_.  For the avoidance of doubt, until an Allowed Claim in Class 5 that arises prior to the Effective Date has been (x) paid in full in accordance with applicable law, or on terms agreed to between the holder of such Claim and the Debtor (or Reorganized Debtor) or in accordance with the terms and conditions of the particular transaction giving rise to such Claim, or (y) resolved pursuant to the disputed claims procedures set forth in Article VII of the Plan or the cure dispute procedures set forth in Article V.C of the Plan: (a) the provisions of Article VIII.B of the Plan shall not apply or take effect with respect to such Claim, (b) such Claim shall not be deemed settled, satisfied, resolved, released, discharged, or enjoined by any provision of the Plan, and (c) the applicable Reorganized Debtor shall remain liable for such Claims.  Upon the satisfaction of subpart (x) or (y) of the foregoing sentence, subparts (a)-(c) of the foregoing sentence shall no longer apply.  Except as otherwise provided in the Plan, nothing shall affect the rights of the Reorganized Debtors in respect of any Unimpaired Claim, including any and all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claim.

39.     Exculpation.    Except as otherwise specifically provided in the Plan or this Confirmation Order, no Exculpated Party shall have or incur, and each Exculpated Party is exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, the DIP Facility, the DIP Documents, the Exit Facility, the Exit Facility Documents, or any Restructuring Transaction, contract, instrument, release or other Plan Transaction Document, agreement, or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of the DIP Facility, the pursuit of the Exit Facility, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of the New Common Stock pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

40.     Release and Exculpation Provisions.    All release and exculpation provisions embodied in the Plan, including but not limited to those contained in Articles VIII.B and C of the

Plan, are (i) integral parts of the Plan, (ii) fair, equitable, and reasonable, (iii) given for valuable consideration, and (iv) are in the best interest of the Debtors (and their Estates), the Reorganized Debtors, and all other parties in interest, and such provisions are approved and shall be effective and binding on all persons and entities, to the extent provided in the Plan. The release contained in Article VIII.B of the Plan was disclosed and explained on the Combined Notice, Ballots, in the Disclosure Statement, and in the Plan. The releases contained in Article VIII.B of the Plan are consensual under applicable law because the releases therein are provided only by (i) holders of Claims that are Unimpaired, subject to paragraph 38, and (ii) holders of Impaired Claims and Interests entitled to vote on the Plan who (a) voted to accept the Plan, (b) did not vote on the Plan, or (c) voted to reject the Plan and did not check the opt-out box. *See In re Indianapolis Downs,* 486 B.R. at 303.

41.    Plan Injunction.    Pursuant to Article VIII.D of the Plan, except as otherwise provided in the Plan or this Confirmation Order, or for obligations issued or required to be paid pursuant to the Plan or this Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation, with respect to any such Claim or Interest, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in

connection with or with respect to any such claims or interests; (d) asserting any right of setoff or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

42.    <u>Release of Liens</u>.  Except (a) with respect to the Liens securing the Exit Facility and, depending on the treatment of such Claims, Other Secured Claims, or (b) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, (i) all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates, including without limitation (for the avoidance of doubt) all First Lien Claims and Second Lien Claims shall be fully released and discharged, (ii) each of the Debtors and the Reorganized Debtors (and any person or entity designated by any of the Debtors or the Reorganized Debtors as their respective delegates for this purpose) are authorized to file all Uniform Commercial Code termination statements, mortgage discharges, intellectual property releases and other releases necessary to effectuate, or reflect of public record, the release and discharge of the mortgages, deeds of trust, Liens, pledges, or other security interests, (iii) the holders of any such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases and discharges, and

(iv) all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests to be released shall revert to the Reorganized Debtors and their successors and assigns. The holder (and any other Person) of any mortgages, deeds of trust, Liens, pledges, or other security interests that are to be released is entitled to rely on this Article VIII.I for the purpose of executing and delivering any documentation related to, or otherwise assisting with, the release or discharge of any such mortgages, deeds of trust, Liens, pledges, or other security interests.

43.     <u>Conditions Precedent to Effective Date</u>.  The Plan shall not become effective unless and until all conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article IX.B of the Plan.

44.     <u>Immediate Binding Effect</u>.  On or after entry of this Confirmation Order and subject to the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, and any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

45.     <u>Payment of Statutory Fees</u>.  All fees due and payable on or prior to the Effective Date, pursuant to 28 U.S.C. § 1930(a) shall be paid on or before the Effective Date. From and after the Effective Date, the Reorganized Debtors shall be jointly and severally liable for and shall

pay the fees assessed under 28 U.S.C. §1930(a) on a quarterly basis with respect to those Chapter 11 Cases that remain open at such time of assessment until these Chapter 11 Cases are converted, dismissed or closed, whichever occurs first. The U.S. Trustee shall not be required to file a request for payment of the quarterly fees, which shall be deemed an Administrative Expense Claim against the Debtors, the Reorganized Debtors, and their estates.

46.     <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Plan, the Plan Transaction Documents, or this Confirmation Order, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Plan.  For the avoidance of doubt, on or after the Effective Date, this Court shall not retain exclusive jurisdiction over any disputes, rights, claims, interests, or controversies under the Exit Facility or the exercise of the respective rights or remedies of the parties thereunder.

47.     <u>Documents, Mortgages, and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions, including the Restructuring Transactions, contemplated in the Plan and this Confirmation Order.

48.     <u>Reversal/Stay/Modification/Vacatur of Order</u>.  Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order or the Plan are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of

any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur including, without limitation, (i) the validity of any obligation, indebtedness or liability incurred by the Reorganized Debtors under the Exit Facility Documents, or (ii) the validity and enforceability of the liens securing the Exit Facility. Notwithstanding any such reversal, stay, modification, or vacatur, of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order, the Plan, the Plan Transaction Documents, or any amendments or modifications to the foregoing.

49.    Provisions of Plan and Order Nonseverable and Mutually Dependent.    The provisions of this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent. Each term and provision of the Plan is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of the Debtors and the Requisite Consenting Lenders, consistent with the terms set forth herein; and (c) nonseverable and mutually dependent.

50.    Headings. Headings utilized herein are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

51.    Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance

with, the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

52.     Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, the Plan Transaction Documents, and any other related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

53.     Waiver of Filings.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the entry of this Confirmation Order.

54.     Governmental Approvals Not Required.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements (including the Plan Transaction Documents), and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

55.     Notice of Order.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Confirmation Order and occurrence of the Effective Date, substantially in the form annexed hereto as **Exhibit B**, to all parties who hold a Claim or Interest in these cases and the U.S. Trustee. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order.

56.    <u>Texas Tax Authorities and Broward County</u>.  The Debtors/Reorganized Debtors shall pay all amounts due and owing as determined by agreement of the parties or a court of competent jurisdiction ("**Due and Owing**") to (i) the Texas Tax Authorities (the "**Texas Tax Claims**"); (ii) Broward County (the "**Broward County Tax Claims**"); and (iii) Travis County (as defined in such entity's objection) (the "**Travis County Tax Claims**" and together with the Texas Tax Claims and the Broward County Tax Claims, the "**Objector Tax Claims**"), respectively, in the ordinary course of business no later than January 31, 2020.  In the event the Objector Tax Claims are paid after January 31, 2020, the Texas Tax Authorities, Broward County, and Travis County, as applicable, shall receive interest (if applicable and payable) from the Petition Date through the Effective Date and from the Effective Date through payment in full at the state statutory rate pursuant to 11 U.S.C. Sections 506(b), 511, and 1129 on any portion of such Claims that is ultimately Due and Owing. The Texas Tax Authorities, Broward County, and Travis County shall retain the liens that secure their respective Objector Tax Claims in the amounts ultimately Due and Owing as well as the state law priority of those liens until such Due and Owing Claims are paid in full. In the event that collateral that secures the Claim of one or more of the Texas Tax Authorities, Broward County, and Travis County, as applicable, is returned to a creditor that is junior to the Texas Tax Authorities, Broward County, and Travis County, as applicable, the Debtor/ Reorganized Debtor shall first pay all ad valorem property taxes that are secured by the collateral.

57.    <u>United States Reservation of Rights</u>.  Notwithstanding any provision in the Plan, this Confirmation Order or any other Plan Transaction Document:  Nothing discharges or releases the Debtors, the Reorganized Debtors, or any non-debtor from any right, claim, liability or cause of action of the United States or any State, or impairs the ability of the United States or any State

to pursue any claim, liability, right, defense, or cause of action against any Debtor, Reorganized

Debtor, or non-debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties,

indemnifications, operating rights agreements or other interests of or with the United States or any

State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors or

Reorganized Debtors under applicable non-bankruptcy law, paid, treated, determined and

administered in the ordinary course of business as if the Debtors' bankruptcy cases were never

filed and the Debtors and Reorganized Debtors shall comply with all applicable non-bankruptcy

law. All claims, liabilities, rights, causes of action, or defenses of or to the United States or any

State shall survive the Chapter 11 Cases as if they had not been commenced and be determined in

the ordinary course of business, including in the manner and by the administrative or judicial

tribunals in which such rights, defenses, claims, liabilities, or causes of action would have been

resolved or adjudicated if the Chapter 11 Cases had not been commenced; *provided*, that nothing

in the Plan or this Confirmation Order shall alter any legal or equitable rights or defenses of the

Debtors, the Reorganized Debtors, and any non-debtor under non-bankruptcy law with respect to

any such claim, liability, or cause of action. Without limiting the foregoing, for the avoidance of

doubt, nothing shall: (i) require the United States or any State to file any proofs of claim or

administrative expense claims in the Chapter 11 Cases for any right, claim, liability, defense, or

cause of action; (ii) affect or impair the exercise of the United States' or any State's police and

regulatory powers against the Debtors, the Reorganized Debtors, or any non-debtor; (iii) be

interpreted to set cure amounts or to require the United States or any State to novate or otherwise

consent to the transfer of any federal or state contracts, purchase orders, agreements, leases,

covenants, guaranties, indemnifications, operating rights agreements, or other interests; (iv) affect

or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability

to assert setoff or recoupment against the Debtors or the Reorganized Debtors and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

58.     <u>Louisiana Department of Revenue Claims</u>.   For the avoidance of doubt, and notwithstanding anything to the contrary in the United States Bankruptcy Code, the Plan or this Confirmation Order: (i) the Louisiana Department of Revenue ("**LDR**") shall not be required to file in the above –captioned case (a) any pre-petition or post-petition claim or (b) any request for payment of any administrative expense in order to be paid as an Allowed Claim under Article II of the Plan; (ii) any claims the LDR may have against the Debtors and/or Reorganized Debtors shall be treated as if the Bankruptcy Case had not been filed and will ride through the case; that is, any dispute as to such claims shall be timely handled in the ordinary course of business pursuant to the remedies available to the parties as set forth in Part III (Assessment and Collection Procedures), Chapter 18 (Administrative Provisions), Subtitle II (Provisions Relating to Taxes Collected and Administered by the Collector of Revenue) of Title 47 (Revenue and Taxation) at Sections 1561, et seq.; and (iii) the time period for a respective Party to avail themselves of any such remedy shall be the time period provided under applicable Louisiana law.

59.     <u>First Lien Letters of Credit</u>.   Notwithstanding anything contained in this Confirmation Order, and unless otherwise agreed to by the Debtors and Reorganized Debtors, the First Lien L/C Claims shall be cash collateralized.

60.     Waiver of Section 341(a) Meeting.  Upon entry of this Confirmation Order, the Section 341(a) Meeting has not been convened.  The convening of the Section 341(a) Meeting is hereby waived in accordance with the Scheduling Order.

61.     Termination of Challenge Period.  The time within which to commence a Challenge (as defined in the Final DIP Order) is terminated as of the date hereof, and the stipulations, admissions, findings, and releases contained in the Final DIP Order shall be binding on the Debtors' estates and all parties in interest.

62.     Final Order.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

63.     Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

64.     Waiver of Stay.  The stay of this Confirmation Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

65.     Inconsistency.  To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

66.    <u>No Waiver</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

Dated:  July 24, 2019
Wilmington, Delaware

Honorable John T. Dorsey
UNITED STATES BANKRUPTCY JUDGE